568 So.2d 1017 (1990)
STATE of Louisiana
v.
Barry ROBERTS and Steve Couture.
No. 90-KK-1308.
Supreme Court of Louisiana.
October 12, 1990.
*1018 PER CURIAM.
The district court denied defendants' petitions for habeas corpus relief seeking to be discharged from custody on their sentences of nine years at hard labor imposed on October 11, 1982, following their guilty pleas to manslaughter. We reverse and grant relief as specified below.
The record shows that on October 11, 1983, or exactly one year after the sentences were imposed and relators secured their release on bail pending further orders of the court, the First Circuit Court of Appeal affirmed relators' convictions and sentences. Notice of the affirmance was given to the district court, the relators, and the district attorney's office. On January 6, 1989, or some five years and three months from the date of the First Circuit affirmance, the district attorney's office for the Twenty-Second Judicial District filed in the district court a Motion for Execution of Sentence for each of the relators. This motion was signed by the district court on January 9, 1989, and warrants issued for the arrests of both relators. It was not until March 28, 1990, or one year and two months after the court signed the motion, that the warrant was executed on Couture. The warrant was never served on Roberts. Upon learning of Couture's arrest, Roberts turned himself in to local authorities.
All told, the relators were taken into custody six years and five months after the First Circuit affirmed their convictions and sentences. The record shows, through stipulation of counsel, that in the interim both men resided in the same place they had lived before being prosecuted, worked, raised families, and made no effort to escape notice of the authorities. Roberts' home had been burglarized and the authorities had twice come to the residence in connection with the investigation. He applied for and received a driver's license in St. Bernard Parish (his domicile) under his own name; he applied for and received a marriage license and was married in St. Bernard Parish; and, twice his picture, name and address appeared in the newspaper as winner of the Birthday Contest in the Times-Picayune. Likewise, Couture worked, resided and raised a family in the area.
The record fully supports the finding of the district court that relators had actual notice that the First Circuit had affirmed their convictions and sentences in October of 1983. There is no indication, however, that relators took any affirmative steps to impede or prevent the lawful execution of their sentences, or that they violated any conditions of their bond, including the condition that they appear in court when ordered to do so. LSA-C.Cr.P. Art. 314; 330. In fact, Roberts' reaction to the arrest of Couture shows that he would have willingly obeyed the process of the court. In cases where the defendant secures *1019 his post-conviction release on bail pending his appeal, the law provides no fixed period of time after affirmance of the defendant's conviction and sentence in which the sheriff of the parish must deliver him to the department of corrections. See LSA-R.S. 15:566(B)(3) and (4). Relators were therefore not on notice, actual or constructive, that they were required to surrender to the authorities by any certain date following affirmance of their convictions and sentences in October of 1983.
The record provides no explanation of why the state delayed so long to file its motion to make the sentences executory, and then waited for well over a year to have the arrest warrants executed. In the meantime, relators reestablished themselves in the community, avoiding any further problems with the authorities while raising families, attaining steady employment, marrying, and otherwise conducting normal, law-abiding lives. Relators have thereby demonstrated their capacity to rehabilitate themselves in a non-custodial setting. Under these circumstances, although the state has not waived and is not estopped from pursuing execution of the sentences, execution as from the beginning of relators' sentences more than seven years after they were initially imposed and more than six years after the sentences were affirmed on appeal is inconsistent with fundamental principles of liberty and justice. See Johnson v. Williford, 682 F.2d 868 (9th Cir.1982); United States v. Merritt, 478 F.Supp. 804 (D.D.C.1979); Lanier v. Williams, 361 F.Supp. 944 (E.D.N.C.1973); State v. Kline, 475 So.2d 1093 (La.1985); see also United States v. Martinez, 837 F.2d 861 (9th Cir.1988); Shields v. Beto, 370 F.2d 1003 (5th Cir.1967); White v. Pearlman, 42 F.2d 788 (10th Cir.1930); Brown v. Brittain, 773 P.2d 570 (Colo. 1989); Ex Parte Eley, 9 Okl.Cr. 76, 130 P. 821 (1913).
Due process and fundamental fairness require that the court fashion appropriate relief. Under the particular circumstances of this case, considering the nature of the offenses and the mitigating aspects of relator's involvement, the sentences imposed, the lapse of time without execution of the sentences, the exemplary conduct of relators, and the absence of any fault or wrongdoing on their part, we conclude that relators shall be considered as having served over one-third of the sentences imposed and as otherwise eligible for parole. Accordingly, it is ordered that relators be released on parole subject to terms and conditions to be imposed by the Board of Parole in the Department of Corrections under the powers and duties provided by LSA-R.S. 15:574.2 through 574.13.