**STATE of Tennessee, Appellee,**

v.

**David Wayne WALKER and Neely Lenard Love, Appellants.**

Supreme Court of Tennessee, at Jackson.

Aug. 14, 1995.

Patrick Martin, Jackson, for appellant Walker.

Scott G. Kirk, Jackson, for appellant Love.

Charles W. Burson, Attorney General & Reporter and Merrilyn Feirman, Assistant Attorney General, Nashville, for appellee.

### *OPINION*

BEN H. CANTRELL, Special Justice.

This Court granted a Rule 11 application under the Tennessee Rules of Appellate Procedure to determine whether the defendants' sentences expired when the sheriff could not incarcerate them due to an overcrowded jail. The Court of Criminal Appeals affirmed the trial court's holding that the sentences did not begin to run until the defendants were actually taken into custody. We reverse and hold that under the circumstances of these cases the sentences began to run when they became final and have, in fact, expired.

### I.

On August 27, 1990 in the City Court of Jackson, defendant Walker entered a guilty plea to the offense of driving under the influence and received a jail sentence of eleven months and twenty nine days. All but twenty days were suspended. The order entered in the City Court contained the following:

MITTIMUS TO JAIL AFTER VERDICT: To the jailer of Madison County: The Judgment contained herein having been Entered, you are, therefore, commanded to receive the Defendant into your custody and detain him until he is legally discharged.

The next day when the defendant reported to the Madison County Sheriff's Office to begin serving his sentence, he was told that there was no space available and that he would be notified when to report. Nearly two years later, on July 27, 1992, he got the notice to report to jail. The record reflects that the Madison County jail was under a federal court order limiting the number of prisoners that could be incarcerated at any one time.

On August 26, 1991, in the Circuit Court of Madison County, defendant Love pled guilty to the charge of driving under the influence. He received the same sentence as Walker, and although the judgment did not specify when he was to start serving the sentence, he reported immediately to the Sheriff's Office. Love was told that the jail was overcrowded and that he would be notified when to report. On August 11, 1992 he was notified to report to jail on September 28, 1992.

Both defendants filed petitions for post-conviction relief which the trial judge treated as petitions for habeas corpus. The Circuit Court denied any relief and the Court of Criminal Appeals affirmed, holding that a sentence begins to run on the day a defendant legally comes into the custody of the sheriff under the judgment of imprisonment. Thus, the mere expiration of time without confinement, according to the Court of Criminal Appeals, is not an execution of the criminal judgment.

### II.

The effect of an inordinate delay in the execution of a criminal judgment has been frequently litigated in other courts. See Annotation, *Effect of Delay in Taking Defendant into Custody after Conviction and Sentence*, 98 A.L.R.2d 687 (1964). Even where the delay results from simple negligence or oversight, the courts have recognized that relief from the sentence might be available on due process grounds. *See United States v. Martinez*, 837 F.2d 861 (9th Cir.1988); *Mobley v. Dugger*, 823 F.2d 1495 (11th Cir. 1987). In both of these cases the courts also analyzed the claims on the basis of waiver or estoppel but refused relief on any basis because of the high standard that must be met before relief is available. (The State's action

"must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction." *Mobley* at 1496–97.) *Cf. State v. Roberts,* 568 So.2d 1017 (La.1990).

Another doctrine called "credit for time at liberty" has been invoked where the defendant has been incarcerated under a criminal judgment but erroneously released through no fault of his own. Under those circumstances the courts hold that his sentence continues to run while he is at liberty. *See Green v. Christiansen,* 732 F.2d 1397 (9th Cir.1984); *Smith v. Swope,* 91 F.2d 260 (9th Cir.1937). We know of no instance, however, where this doctrine has been applied to a situation where no time at all has been served. *See United States v. Martinez,* 837 F.2d 861 (9th Cir.1988).

In other cases, most of them in the state courts, where the defendant has presented himself for incarceration and has been refused admission for some reason (an overcrowded jail or simple inaction on the part of the jailer) the courts have said that the sentence began to run when the defendant did all that was required of him to allow the imposition of the criminal sentence. *State v. Riske,* 448 N.W.2d 260 (Wis.App.1989); *Maxwell v. State,* 188 Ga.App. 862, 374 S.E.2d 800 (1988); *Huff v. McLarty,* 241 Ga. 442, 246 S.E.2d 302 (1978); *Carter v. State,* 339 So.2d 594 (Ala.App.1976).

### III.

■ The lack of in depth analysis in some of the state cases—particularly the part played by state statutes—persuades us that there is no uniform constitutional standard that has been applied in cases where a defendant is refused admission to the jail because of overcrowded conditions. We cannot say that under those conditions the State's action is so affirmatively wrong or grossly negligent that further incarceration would be inconsistent with fundamental principles of liberty and justice. We will, therefore, examine the question based on our own statutes.

There are three statutes that bear on the questions raised here. The first, Tenn.Code Ann. § 40–23–103 provides:

It is the duty of the sheriff in whose custody the defendant is at the rendition of the judgment, or afterwards legally comes, to execute the judgment of imprisonment by committing the defendant, as soon as possible, to jail, or to the warden of the penitentiary, according to the exigency of the writ.

The next, although first in order in the Code, is Tenn.Code Ann. § 40–23–101, the pertinent parts of which provide:

(a) Hereafter, when a person is sentenced to imprisonment, the judgment of the court shall be rendered so that such sentence shall commence on the day on which the defendant legally comes into the custody of the sheriff for execution of the judgment of imprisonment.

. . . .

(2) This section shall not interfere with the operation of the statute requiring sheriffs in whose custody defendants come for execution of judgments of imprisonment to commit such defendants as soon as possible to jail or to the warden of the penitentiary.

The third statute appears in title 41, chapter 4 of the Code dealing with the powers and responsibilities of sheriffs or jailers in general. Section 121 of that chapter provides:

(a) The sheriff has authority, when the jail of his county is insufficient for the safekeeping of a prisoner, to convey him to the nearest sufficient jail in the state.

■ The first two statutes indicate a legislative intent that the sheriff shall commit a defendant to jail as soon as possible after the rendition of the judgment and that a judgment requiring incarceration should specifically provide that the sentence begins to run "on the day on which the defendant legally comes into the custody of the sheriff for execution of the judgment of imprisonment." We do not think the statutes conflict since subsection (a)(2) of Tenn.Code Ann. § 40–23–101 specifically provides that it will not interfere with Tenn.Code Ann. § 40–23–103.

The State argues that since the Madison County jail was under a federal court order limiting the number of prisoners that could be confined there at any one time, it was not possible for the sheriff to commit the defendants until they were ordered to report. Therefore, the sentences did not begin to run and have not expired.

■ But what of Tenn.Code Ann. § 41–4–121 allowing a sheriff to convey prisoners to the nearest jail "sufficient" for their safekeeping? The term "prisoner" as used in this section refers to persons sentenced to imprisonment in the county jail. Tenn.Code Ann. § 41–4–103. We are also convinced that an "insufficient" jail includes one that is so overcrowded that it violates the prisoner's rights under the Eighth amendment to the United States Constitution. It is arguable, of course, that the statute refers only to the sufficiency of the jail to keep prisoners under lock and key; i.e. to prevent an escape. But the statute uses broad terms, "insufficient" and "safekeeping of a prisoner", which we think cover more than just the prevention of an escape. *Cf. State v. Grey*, 602 S.W.2d 259 (Tenn.Crim.App.1980).

■ Recognizing the authority of a sheriff under this code section, it could hardly be argued that the sheriff in this case committed the appellants to jail as soon as possible. There is no proof in the record of any attempt to find the "nearest sufficient jail" for their safekeeping.

■ What is the remedy for persons sentenced to jail who have presented themselves to the proper authorities for incarceration and have been denied their request to begin serving their sentences immediately? We are persuaded that our statutes require more than a passive course of non-action that leaves such persons living indefinitely under an unexecuted criminal sentence. Therefore, we hold that where persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier.

We are dealing with two related societal problems, drunk drivers and overcrowded jails. Responding to a public outcry over the huge losses—in human lives and property damage—caused by drunk drivers, the legislature made incarceration mandatory, even for the first offense. Few would disagree with the proposition that people who operate vehicles in an impaired state deserve to be punished severely.

Such punishment, however, has its costs. Longer, mandatory sentences inevitably lead to overcrowded jails, and building more jails severely impacts the public treasury. But the drunk driving problem cannot be addressed in a vacuum. If drunk drivers are to be punished by incarceration the public must stand ready to provide the facilities in which the sentence may be served. Otherwise, the law books will be filled with criminal sanctions having absolutely no meaning and drunk drivers will remain free to endanger the public without the deterrent effect of punishment. A criminal conviction involving a period of incarceration presumes that there is a place where the sentence can be carried out.

■ Although we are convinced that the sentences imposed on the defendants in these cases have expired, we are also persuaded that the rule announced today should be prospective only and should apply only to cases tried or retried after the date of this opinion and cases on appeal in which the issue has already been raised.[1]

The judgments of the Court of Criminal Appeals and the Circuit Court of Madison County are reversed and the sentences imposed on the appellants are dismissed. Tax the costs on appeal to the State.

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

WILLIAM H.D. FONES, Special Justice, dissents.

1. We note that the legislature passed and the governor signed Public Chapter No. 524 of the Acts of 1995 which may affect the rule we announce today. We express no opinion about what effect the statute may have because that issue is not before us.

**WILLIAM H.D. FONES, Special Justice, dissenting.**

I respectfully dissent. Both of these defendants were charged with driving while intoxicated, second offense. Both were sentenced as first offenders upon their guilty pleas to the lesser offense. They have received all of the largesse that they are entitled to under the statutes of this state or upon the principles of fundamental fairness.

## I.

The trial judge found, in part, as follows:

I find as a matter of fact that the jail and all jail facilities, places of incarceration in Madison County which could be used to incarcerate Mr. Walker for his 20 days or whatever, that we had a situation ... being under federal court order, we didn't have room in the jails ... and I find that he could not have been taken within that one year period. He could not have been constitutionally incarcerated because of the overcrowding and court orders.

The findings of fact with respect to defendant Love were the same.

## II.

The first ground upon which the majority relies to relieve these defendants from serving any prison time is a statute [1] that was not relied upon by the defendants in the trial or appellate courts, nor was it mentioned by any court prior to its appearance in the majority opinion. That would not prevent this Court from relying upon the statute if the undisputed facts in the record clearly invoked the statute, and its invocation was essential to reach the correct result. *See City of Memphis v. International Brotherhood of Electrical Workers Union,* 545 S.W.2d 98 (Tenn. 1976) and cases cited therein.

However, that is not the case here. The language of the statute limits "insufficient" jails to those that are insufficient, "for the safe keeping of a prisoner." When the legislature passed that statute, no one had ever heard of unconstitutionally overcrowded jails. (1809, 1817).

Not only does the majority ignore the plain language of the statute, but they refute the finding of the trial judge that defendants could not have been constitutionally incarcerated earlier, by finding that because the sheriff did not prove that he attempted to find a sufficient jail in a nearby county, it could not be said that he complied with the statutory admonition that he commit defendants to jail "as soon as possible". If defendant had relied upon that position in the trial court, the sheriff would have had no difficulty in proving the futility of that effort.

The statute that the majority misinterprets merely authorizes the sheriff to convey prisoners to the nearest sufficient jail—it is not a mandate. But, if it did mandate a search for a sufficient jail in another county, it would be a useless, futile act.

## III.

The other ground asserted by the majority is that fundamental fairness demands that these defendants should not have to "live indefinitely under an unexecuted criminal sentence." I think it would be equally valid to observe that all criminal defendants would rather live indefinitely under an unexecuted sentence than to serve one day in jail. Be that as it may, neither of these defendants protested the delay in any way, nor did they seek relief from the indefinite burden of delay by petitioning the sheriff or the trial court, until they were notified to report to serve their sentences.

On cross-examination defendant Walker was asked if he had been prejudiced by not being able to serve the 20 days immediately after the conviction. The substance of his answer was that he had his own business and had better employees, then, than *now,* that his employees are stealing from him and it would cost him money if he had to go to jail. Those circumstances have no bearing whatsoever on the fundamental fairness issue. So, neither defendant has articulated a foundation for a finding of fundamental unfairness in the delay of imprisonment, nor has the majority, beyond decreeing it because

1. Tenn.Code Ann. § 41–4–121(a), p. 556 majority    opinion.

defendants were not incarcerated immediately after sentence.

There is no precedent for invoking the fundamental fairness doctrine in these circumstances. The cases require government or state actions that "are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in its aftermath." *See Green v. Christiansen,* 732 F.2d 1397 (9th Cir.1984); *Mobley v. Dugger,* 823 F.2d 1495 (11th Cir.1987); *U.S. v. Martinez,* 837 F.2d 861 (9th Cir.1988) and cases cited therein. The majority makes no claim that state action in this case attains that high degree of prejudicial misconduct.

The majority decrees that the sentences of drunk drivers begin to run when the judgment of conviction becomes final, or the prisoner is actually incarcerated, whichever is earlier. A conviction becomes final, absent appeal, in 30 days after entry of judgment. Thus, absent jail space, the sentence of convicted drunk drivers who fit into the profile of Walker and Love will expire in 50 days without serving a day in jail. No one can predict the number of drunk drivers that will be the beneficiaries of this judicial gratuity. But another result of this *ipse dixit* decision is predictable—to wit, that the Tennessee Criminal Justice System has taken another significant step toward total elimination of deterrence. Deferring the effective date three months is insufficient time for the legislative branches of government to cure jail overcrowding.

I would hold that sentences of imprisonment do not commence until the day on which a defendant legally comes into the custody of the sheriff; that these two defendants did not legally come into the custody of the sheriff of Madison County because of the federal court order, and the finding of the trial judge that the sheriff could not legally or constitutionally accept them as prisoners until the respective dates they were directed to report; that is in accord with the clear meaning of Tenn.Code Ann. § 40–23–101(a), applied to the undisputed facts of this case.

I would affirm the judgment of the trial court and the Court of Criminal Appeals denying relief.