[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 215.]

THE STATE OF OHIO, APPELLEE, *v.* ZUCAL, APPELLANT.

[Cite as *State v. Zucal*, 1998-Ohio-377.]

*Criminal law—Sentencing—Six-year delay between imposition of a mandatory jail sentence resulting from a conviction of a drunk driving offense and the execution of said sentence is an excessive and unreasonable lapse of time between sentencing and execution of sentence—In convictions involving misdemeanor offenses, a delay in execution of sentence resulting from jail overcrowding that exceeds five years from the date that sentence is imposed is unlawful—Sentence vacated, when—Modification of sentence—No modification of sentence may occur after five years from date of sentencing.*

1. In convictions involving misdemeanor offenses, a delay in execution of sentence resulting from jail overcrowding that exceeds five years from the date that sentence is imposed is unlawful.

2. Any sentence resulting from a conviction of a misdemeanor offense that is not completed within five years from the date of sentencing must be vacated.

3. Sentences may continue to be modified, in accordance with applicable law, within the five-year period after imposition of sentence.

4. No modification of sentence may occur after five years from the date of sentencing.

(No. 97-822—Submitted March 24, 1998—Decided June 24, 1998.)

APPEAL from the Court of Appeals for Stark County, No. 1996CA00179.

————————————

{¶ 1} On January 10, 1990, appellant, Diane L. Zucal, was charged with operating a motor vehicle while under the influence of alcohol or a drug of abuse. On March 14, 1990, following a jury trial, appellant was convicted of driving under

the influence of alcohol. Appellant, having been convicted of two drunk-driving offenses within a five-year period, was sentenced to, among other things, a mandatory term of imprisonment of ten consecutive days pursuant to former R.C. 4511.99(A)(2).[1] The trial court ordered appellant to report to the Stark County Jail on March 16, 1990 to commence her ten-day jail sentence.

{¶ 2} Appellant reported to the jail at the scheduled date and time. However, due to "jail overcrowding," appellant was issued an "Order of Release" that temporarily released her from the Stark County Jail and directed her to return seventeen months later on August 26, 1991 and begin serving her jail sentence.

{¶ 3} On August 26, 1991, appellant reported to the Stark County Jail as ordered. The commencement of appellant's sentence, however, was again temporarily suspended due to jail overcrowding. Appellant was given two days' credit for time served and released from custody with orders to return to the Stark County Jail another two years and five months later on February 1, 1994.

{¶ 4} On February 1, 1994, appellant once again reported to the Stark County Jail as ordered. Again, appellant was released from custody due to jail overcrowding, credited with one additional day served toward her jail sentence, and ordered to report back to the Stark County Jail in five years and eight months on October 20, 1999 to serve the seven days that remained of her jail sentence.

{¶ 5} However, on March 28, 1996, the Canton Municipal Court, Stark County, filed an order directing appellant to appear before the municipal court on June 12, 1996 for modification of her jail sentence. As a result of the lengthy delay in commencement of her incarceration, appellant, on May 6, 1996, filed a motion to vacate the remaining seven days of her sentence. On May 29, 1996, the

---

1. The version of R.C. 4511.99(A)(2), enacted as part of Am.Sub.S.B. No. 49 on November 3, 1989, states that "[i]f, within five years of the offense, the offender has been convicted of or pleaded guilty to a violation of section 4511.19 of the Revised Code, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, * * * the court shall sentence the offender to a term of imprisonment of ten consecutive days * * *." (143 Ohio Laws, Part I, 435.)

municipal court, pursuant to the alternative sentencing provision of former R.C. 4511.99(A)(2), modified appellant's original ten-day jail sentence to five days incarceration in the Stark County Jail and eighteen days of electronically monitored house arrest.[2] Appellant was credited with three days of jail time served toward her now five-day jail sentence. By order dated June 25, 1996, the Canton Municipal Court overruled appellant's motion to vacate sentence.

{¶ 6} Appellant timely appealed to the Stark County Court of Appeals, challenging the denial of her motion to vacate sentence. The court of appeals affirmed the judgment of the municipal court. The court of appeals held that the applicable penalty statute controlling appellant's case mandated a jail sentence of ten days and, thus, absent authority to the contrary, no vacation of appellant's jail sentence was permitted.

{¶ 7} This matter is now before this court pursuant to the allowance of a discretionary appeal.

_____

*P. Steven Maasz,* for appellant.

_____

_____

2. We raise the question, without deciding, whether the alternative sentencing provision under current R.C. 4511.99(A)(2)(a), consisting of a term of imprisonment of five consecutive days and not less than eighteen consecutive days of electronically monitored house arrest, is a greater penalty rather than a less restrictive deprivation of liberty than the ten-day term of imprisonment mandated by the statute. See Clause 3, Section 9, Article I, United States Constitution; Clause 1, Section 10, Article I, United States Constitution; Section 28, Article II, Ohio Constitution. Moreover, we note in passing that the alternative sentencing provision, by the very terms of the statute, was not available to the trial court as a sentencing option. See the version of R.C. 4511.99(A)(8)(a) and (b), as enacted by Am.Sub.S.B. No. 131 on July 25, 1990. (143 Ohio Laws, Part I, 691-692.)

**DOUGLAS, J.**

{¶ 8} The issue presented in this appeal concerns the delay in execution of appellant's mandatory ten-day jail sentence. Specifically, the issue before us is whether a six-year delay[3] between the imposition of a mandatory jail sentence resulting from a conviction of a drunk driving offense and the execution of said sentence is an excessive and unreasonable lapse of time between sentencing and execution of sentence.

{¶ 9} This issue was previously before this court, as recently as two years ago, in *N. Canton v. Hutchinson* (1996), 75 Ohio St.3d 112, 661 N.E.2d 1000. In that case appellee, Nancy Hutchinson, was arrested and convicted for disorderly conduct, criminal trespass, and resisting arrest. As ordered by the trial court, Hutchinson reported to jail to serve her sentence. However, due to jail overcrowding, the commencement of Hutchinson's jail term was suspended and she was ordered to return five years and three days later to begin serving her sentence. Hutchinson appealed to the Stark County Court of Appeals, challenging, among other things, the delay in execution of her jail sentence. The court of appeals held that the delay in commencement of sentence for more than five years was cruel and unusual punishment and that it violated the five-year period of probation as set forth in R.C. 2951.07. *Id.* at 112-113, 661 N.E.2d at 1001. On appeal to this court, we vacated the judgment of the court of appeals on the commencement-of-sentence issue for lack of a final appealable order. *Id.* at 115, 661 N.E.2d at 1002.

{¶ 10} In *Hutchinson,* this court noted our deep concern with the issue of jail overcrowding and the consequences of court-ordered sentences of incarceration being interminably delayed. *Id.* at 113, 661 N.E.2d at 1001. Moreover, we recognized in *Hutchinson* that the issue is one that is capable of repetition. While mindful of the perhaps pressing need of a pronouncement from this court on the

---

3. Or it is nine years and seven months if the October 20, 1999 date is used.

questions raised in *Hutchinson,* we nonetheless were constrained by our lack of jurisdiction in that case to properly consider those concerns. *Id.* at 114-115, 661 N.E.2d at 1002.

{¶ 11} Now the issue is before us again. The very same issues and concerns of jail overcrowding and delays in execution of sentences that we noted in *Hutchinson* are, in the case now before us, ripe for our review. Thus, it is not only appropriate, but, considering the serious dilemma of jail overcrowding in this state, also urgent for us to now decide whether lengthy delays in commencement of sentences due to jail overcrowding are proper.

{¶ 12} We are concerned with a growing societal problem, jail overcrowding, that has become increasingly difficult to remedy. As the instant action illustrates, one reason for this difficulty, though not the sole reason, is the tougher sentencing laws meant to combat another societal problem, drunk driving. Courts in other states have addressed these issues and have resolved them in varying fashions. For instance, the Tennessee Supreme Court in dealing with inordinate delays in execution of criminal sentences of incarceration has held that "where persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier." *State v. Walker* (Tenn.1995), 905 S.W.2d 554, 557. The Wisconsin Court of Appeals, on the other hand, has determined that a criminal offender who reports to jail to begin serving a sentence of incarceration and is refused admission due to jail overcrowding is entitled to credit for time served against his or her sentence from the time the offender remains at liberty until instructed to report back to the jail. *State v. Riske* (1989), 152 Wis.2d 260, 263-264, 448 N.W.2d 260, 261-262. While each of these cases poses potentially adequate solutions, we believe a more equitable remedy, one that balances the criminal offender's liberty interests against the state's interest

in the proper administration of justice, is needed to better meet these important competing concerns.

{¶ 13} Appellant argues in her first proposition of law that the state may not delay execution of her jail sentence beyond the five-year maximum probationary period prescribed by R.C. 2951.07. Appellant asserts that because R.C. 2951.07 limits the length of time for which an offender could be controlled through probation, it should likewise limit any substantially similar curtailment of freedom that results from delay in commencement of a jail sentence. We agree.

{¶ 14} R.C. 2951.07 provides that probation, except in certain circumstances not applicable here, "shall not exceed five years." In *Brewster v. Sexton* (1992), 73 Ohio App.3d 777, 598 N.E.2d 204, the Stark County Court of Appeals determined that a lapse of time of approximately one and a half years between imposition of sentence and execution of sentence did not constitute cruel and unusual punishment under either the United States or the Ohio Constitutions. *Id.* at 779, 598 N.E.2d at 206. The court in *Brewster* noted that, pursuant to R.C. 2951.07, Ohio courts, notwithstanding the original sentence of incarceration, have the power and authority to interfere with the freedom of a criminal offender for a period of five years. Thus, the court of appeals reasoned that a delay of less than five years did not amount to a constitutional violation. *Id.* at 780, 598 N.E.2d at 206.

{¶ 15} We agree with the rationale of the Stark County Court of Appeals in *Brewster*. Thus, we find it appropriate to borrow from the probationary period statute, R.C. 2951.07, in resolving the issue whether lengthy delays in commencement of sentences resulting from jail overcrowding are proper. While we are not prepared to say that a delay of more than five years between imposition of sentence and execution of sentence amounts to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution and by Section 9, Article I of the Ohio Constitution, such a lengthy delay of longer than

five years is an unreasonable, burdensome, and unlawful restriction of appellant's freedom, given our notions of due process.

{¶ 16} In enacting R.C. 2951.07, the legislature laid out the rules for how long the state could lawfully interfere with a criminal offender's freedom once a term of incarceration has been served. The legislature accomplished this by restricting the length of time to five years that an offender could be controlled or monitored through the use of probation. In the case now before us, appellant's original sentence was imposed on March 14, 1990. In attempting to serve her sentence, appellant diligently complied with every order that directed her to report to the Stark County Jail. On three separate occasions, appellant arranged her employment and personal affairs to comply with the court's order. Nevertheless, each time appellant reported to serve her jail sentence, she was turned away due to a lack of adequate jail space and ordered to report back at progressively later dates. Finally, on March 28, 1996, more than six years after appellant's original conviction and sentence, the trial court ordered appellant to appear for modification of her jail sentence. It is obvious that the trial judge did so in an attempt to be fair both to appellant and to the state. It is clear that the frustration level of the judge in this and like cases had reached its zenith.

{¶ 17} We share that frustration. It is a problem not of our own making and we cannot, alone, bring about a solution. A public, fed up with crime, has demanded longer and tougher sentences for persons violating our criminal statutes. The General Assembly has responded, and it is our job (the courts') to enforce the prescribed penalties. Yet, when we do so, we find that in too many cases across this state, there is a "no vacancy" sign at the jailhouse door. That, then, leaves us with the problem that today confronts some trial courts, some courts of appeals, and us. We, with substantial reluctance, are now required to confront this problem head-on.

**{¶ 18}** We believe that it would be manifestly unfair, if not unconstitutional, to subject appellant, as well as others similarly situated, to restraints on her liberty beyond the maximum permissible period of probation provided for in R.C. 2951.07. The delay in execution of sentence in this case has required appellant to indefinitely place her life on hold for a period of over six years, subject to the availability of adequate jail space. Such a lengthy delay is an unlawful deprivation of appellant's liberty. There comes a point in time when such a delay becomes unreasonable and fails to comport with traditional notions of fair play and substantial justice.

**{¶ 19}** Moreover, excessive delays in sentence execution have an adverse impact on the proper administration of justice by diminishing the deterrent effect intended by criminal penalties. In *State v. Mathia* (Dec. 11, 1992), Portage App. No. 92-P-0035, unreported, 1992 WL 366891, the Portage County Court of Appeals stated that a convicted person cannot be required to serve his sentence " 'when the delay has been so great that society could derive no good from its enforcement and when such delay has occurred without the fault of the convict.' " *Id.*, quoting *State ex rel Shotkin v. Buchanan* (Fla.App.1963), 149 So.2d 574, 575. In this regard we agree with the Portage County Court of Appeals.

**{¶ 20}** In *Mathia,* the defendant was sentenced to serve ten days in jail, but was prevented from doing so on three different occasions due to jail overcrowding. While the court of appeals affirmed the trial court's decision overruling defendant's motion to vacate sentence on the basis of insufficient evidence in the record, Presiding Judge Ford in *Mathia* perspicaciously noted that there was a balancing of interests between "the state's right to have one serve declared sentences and the significantly negative results that obtain when justice delayed is justice denied because society no longer has the same level of interest in its execution."

**{¶ 21}** We therefore hold that, in convictions involving misdemeanor offenses, a delay in execution of sentence resulting from jail overcrowding that exceeds five years from the date that sentence is imposed is unlawful. Thus, any

sentence resulting from a conviction of a misdemeanor offense that is not completed within five years from the date of sentencing must be vacated. Sentences may continue to be modified, in accordance with applicable law, within the five-year period after imposition of sentence. However, no modification of sentence may occur after five years from the date of sentencing.

{¶ 22} We realize the effect our decision may have on the unexecuted sentences of potentially thousands of convicted misdemeanor offenders. However, a line is crossed when the punishment no longer fits the crime. That has occurred in this case. Five years should be a sufficient period of time to enable a criminal offender to serve a ten-day jail sentence. Inherent in our system of government is the concept of liberty, to, in effect, be free from all restraints except such as are justly imposed by law. When such restraints are unfairly and unreasonably imposed, having no relationship to the wrong committed, it is for this court to so hold, no matter how unpopular that decision may be. If the General Assembly wants the mandatory sentences it has prescribed carried out, then the General Assembly must provide the courts and the local communities the wherewithal to do the job it has assigned us. Short of this, we today choose a moderate and middle course to answer the question that has been presented to us.

{¶ 23} Accordingly, we reverse the judgment of the court of appeals and vacate appellant's sentence.

*Judgment reversed*
*and sentence vacated.*

RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., concurs in judgment only.

————————————