# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JUNE SESSION, 1999



**FILED**

**August 5, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9810-CC-00310 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | MADISON COUNTY |
| VS. | ) | |
| | ) | HON. ROY B. MORGAN, JR. |
| ROBERT M. McKNIGHT, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Habeas Corpus) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF MADISON COUNTY

FOR THE APPELLANT:

C. MARK DONAHOE
312 East Lafayette Street
P.O. Box 2004
Jackson, TN 38302-2004

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

JERRY WOODALL
District Attorney General

SHAUN A. BROWN
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

In this appeal we determine whether the Defendant's sentences for two DUI convictions expired during the time the sheriff could not incarcerate the Defendant due to an overcrowded jail. The trial court ruled that the Defendant's sentences had not expired. We agree and affirm the judgment of the trial court.

On May 7, 1997, the Defendant pleaded guilty to and was convicted of DUI, second offense and DUI, third offense.[1] For these convictions, he received consecutive sentences of eleven months and twenty-nine days in the county workhouse. He was ordered to serve 150 days in confinement for one of the convictions, followed by sixty days confinement for the other conviction, with the balance of his sentences to be served on probation. His effective sentence was thus two years, with 210 days to be served in confinement.[2]

The Defendant immediately presented himself to the county sheriff's office to begin serving his sentences. He was told that no space was available for him to serve his sentences and that he would be notified when to report. In August of 1998, the Defendant received notice from the sheriff's office that he was to report to begin serving his effective 210-day sentence.

On September 3, 1998, the Defendant filed a "Motion for Post-Conviction Relief and/or Writ of Habeas Corpus." He asserted that the notification to report

---

[1] Tenn. Code Ann. §§ 55-10-401, -403.

[2] The Defendant was also convicted of and sentenced for other offenses, none of which is relevant to the issues presented in this appeal.

to jail came over one year after his sentences became final and stated that "[t]o require the Defendant to serve a sentence after expiration of the sentence is a violation of the Defendant's due process rights, violation of the credit for time at liberty doctrine and is a violation of the principle of fundamental fairness."

The trial court conducted a hearing on the Defendant's motion, at which time the parties stipulated to the pertinent facts as stated herein. At the conclusion of the hearing, the trial court denied the Defendant relief from his sentences, relying on the provisions of Tennessee Code Annotated § 55-10-403(p)(3). From this order, the Defendant now appeals.

In this appeal, the Defendant relies primarily on State v. Walker, 905 S.W.2d 554 (Tenn. 1995). The facts presented in Walker were quite similar to those presented in the case at bar. On August 27, 1990, Defendant Walker was convicted of DUI and received a jail sentence of eleven months and twenty-nine days, with all but twenty days suspended. Id. at 555. He reported to the sheriff's office to begin serving his sentence and was told that no space was available and that he would be notified when to report. Id. Almost two years later he received the notice to report to jail. Id. He sought relief from his sentence, alleging that it had expired. Id. The trial court denied Walker relief and this Court affirmed, however, our supreme court granted Walker relief. Id. The Court based its decision upon an interpretation of our statutes, holding that "where persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier." Id. at 557.

In <u>Walker</u>, our supreme court first discussed the due process and fundamental fairness concerns, including the "credit for time at liberty" doctrine:

> The effect of an inordinate delay in the execution of a criminal judgment has been frequently litigated in other courts. Even where the delay results from simple negligence or oversight, the courts have recognized that relief from the sentence might be available on due process grounds. In [these] cases the courts also analyzed the claims on the basis of waiver or estoppel but refused relief on any basis because of the high standard that must be met before relief is available. (The State's action "must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action of inaction.")
>
> Another doctrine called "credit for time at liberty" has been invoked where the defendant has been incarcerated under a criminal judgment but erroneously released through no fault of his own. Under those circumstances the courts hold that his sentence continues to run while he is at liberty. We know of no instance, however, where this doctrine has been applied to a situation where no time at all has been served.
>
> In other cases, most of them in the state courts, where the defendant has presented himself for incarceration and has been refused admission for some reason (an overcrowded jail or simple inaction on the part of the jailer) the courts have said that the sentence began to run when the defendant did all that was required of him to allow the imposition of the criminal sentence.
>
> The lack of in depth analysis in some of the state cases—particularly the part played by state statutes—persuades us that there is no uniform constitutional standard that has been applied in cases where a defendant is refused admission to the jail because of overcrowded conditions. We cannot say that under those conditions the State's action is so affirmatively wrong or grossly negligent that further incarceration would be inconsistent with fundamental principles of liberty and justice. We will, therefore, examine the question based on our own statutes.

<u>Id.</u> at 555-56 (citations omitted).

In the case at bar, as in <u>Walker</u>, we cannot conclude that service of the Defendant's sentences would violate his due process rights or otherwise offend principles of fundamental fairness. Here, the Defendant received an effective sentence of two years. Due to overcrowded jail conditions, space was not available to accommodate incarceration of the Defendant for approximately a

year after he was sentenced. Any inconvenience to the Defendant is certainly not sufficient to violate Defendant's due process rights. Under these conditions and circumstances, we cannot conclude that the State's action is so affirmatively wrong or grossly negligent that incarceration would be inconsistent with fundamental principles of liberty and justice. We therefore examine the issue based on the statutes enacted by our legislature.

In <u>Walker</u>, our supreme court analyzed the applicable statutes and found

> a legislative intent that the sheriff shall commit a defendant to jail as soon as possible after the rendition of the judgment and that a judgment requiring incarceration should specifically provide that the sentence begins to run "on the day on which the defendant legally comes into the custody of the sheriff for execution of the judgment of imprisonment."

<u>Id.</u> at 556.

The court also noted in <u>Walker</u> that the sheriff was authorized to convey prisoners to other jails in the state if the jail in the sheriff's county was insufficient. <u>Id.</u> The court noted that the sheriff had not committed Walker to jail as soon as possible because there was no proof in the record that the sheriff attempted to find the "nearest sufficient jail." <u>Id.</u> at 557.

The <u>Walker</u> court concluded as follows:

> What is the remedy for persons sentenced to jail who have presented themselves to the proper authorities for incarceration and have been denied their request to begin serving their sentences immediately? We are persuaded that <u>our statutes require</u> more than a passive course of non-action that leaves such persons living indefinitely under an unexecuted criminal sentence. Therefore, we hold that where persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier.

<u>Id.</u> at 557 (emphasis added).

It appears clear that the court's decision in <u>Walker</u> was based on statutory construction and a determination of legislative intent. By the time our supreme court's opinion in <u>Walker</u> was filed, our legislature had enacted new statutes concerning the time and manner of service of DUI sentences.[3]

Chapter number 524 of the Public Acts of 1995 amended Tennessee Code Annotated § 55-10-403 by adding the following new subsection (p):

> (p)(1) An offender sentenced to a period of incarceration for a violation of Tennessee Code Annotated, 55-10-401, shall be required to commence service of such sentence within thirty (30) days of conviction or, if space is not immediately available in the appropriate municipal or county jail or workhouse within such time, as soon as such space is available. If in the opinion of the sheriff or chief administrative officer of a local jail or workhouse, space will not be available to allow an offender convicted of a violation of Tennessee Code Annotated, 55-10-401, to commence service of such sentence within ninety (90) days of conviction, such sheriff or administrative officer shall use alternative facilities for the incarceration of such offender. If an offender convicted of a violation of Tennessee Code Annotated, 55-10-401, prior to the effective date of this act has not commenced service of the sentence imposed

---

[3] The <u>Walker</u> court noted the passage of public chapter number 524 of the Acts of 1995 and observed that the new law "may" affect the ruling announced in <u>Walker</u>. <u>Walker</u>, 905 S.W.2d at 557 n.1. The new statutory provisions were not in effect until July 1, 1995 and only applied to the service of sentences pronounced on or after that date. 1995 Tenn. Pub. Acts 524, sec. 3.

within ninety (90) days [of] such offender's conviction, the sheriff or administrative officer shall, after notifying the offender, use alternative facilities for the incarceration of such offender. The appropriate county or municipal legislative body shall approve the alternative facilities to be used in such county or municipality.

(2) As used in this subsection "alternative facilities" include, but are not limited to, vacant schools or office buildings or any other building or structure owned, controlled or used by the appropriate governmental entity that would be suitable for housing such offenders for short periods of time on an as-needed basis. A governmental entity may contract with another governmental entity or private corporation or person for the use of alternative facilities when needed and governmental entities may, by agreement, share use of alternative facilities.

(3) Nothing in this subsection shall be construed to give an offender a right to serve a sentence for a violation of Tennessee Code Annotated, Section 55-10-401, in an alternative facility or within a specified period of time. Failure of a sheriff or chief administrative officer of a jail to require an offender to serve such a sentence within a certain period of time or in a certain facility or type of facility shall have no effect upon the validity of the sentence.

1995 Tenn. Pub. Acts 524, sec. 2 (emphasis added).

This act specifically applies only to sentences for DUI. This law clearly expresses the legislative intent that DUI offenders begin serving their sentences within thirty days of conviction if space is available. If the sheriff is of the opinion that space will not be available within ninety days, the legislature expresses its intent that the sheriff arrange for alternative facilities for the incarceration of the offender. The legislature has clearly expressed its intent that jail sentences for DUI convictions be promptly served. We believe, however, that the legislature has also clearly expressed its intent that the failure of the sheriff to require a DUI offender to serve a sentence within a certain period of time does not relieve the offender from the requirement of serving the sentence.

In summarizing the proposed bill to the members of the Judiciary Committee of the Tennessee House of Representatives, Representative Roy

Herron, the sponsor of the bill, explained that the legislation provided "if the sheriff doesn't require that as he's supposed to . . . if somehow the ball's dropped, that doesn't mean you don't have to serve the time." He further stated that the bill "makes clear that if for some reason, you don't begin serving within the time period required by law, that that doesn't mean your sentence is no longer valid." H. Judiciary Comm., 99th Gen. Assembly (Tenn., Apr. 5, 1995) (statement of Representative Roy Herron).

We believe that by enacting chapter number 524 of the Public Acts of 1995, the legislature intended that a DUI offender not escape responsibility for serving a sentence simply because space was not available to serve the sentence in the county jail within a specified period of time. Subject to constitutional constraints, policy decisions such as this are within the purview of the legislature. Under the facts presented in this case, we cannot conclude that requiring the Defendant to serve his sentence would be inconsistent with fundamental principles of liberty and justice in violation of the Defendant's due process rights.

The judgment of the trial court is accordingly affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____

-8-

DAVID G. HAYES, JUDGE

_____
NORMA McGEE OGLE, JUDGE

NORMA McGEE OGLE, JUDGE