**STATE of Tennessee, Appellee,**

v.

**Ruby Jenell CHAPMAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 18, 1997.

Application for Permission to Appeal Denied by Supreme Court Sept. 14, 1998.

---

Matthew M. Maddox, Huntingdon, for Appellant.

Charles W. Burson, Attorney General, Deborah H. Tullis, Assistant Attorney General, Nashville, Robert Radford, District Attorney General, Eleanor Cahill, Assistant District Attorney General, Huntingdon, for Appellee.

## OPINION

TIPTON, Judge.

The defendant, Ruby Jenell Chapman, was convicted pursuant to guilty pleas entered on November 28, 1995, in the Carroll County Circuit Court of vandalism and theft of property valued less than five hundred dollars, both Class A misdemeanors. For her convictions, the defendant received concurrent sentences of eleven months and twenty-nine days to serve ten days in the Carroll County Jail with the remaining portion of her sentences to be suspended. The defendant appeals as of right from an order entered by the Carroll County Circuit Court denying the defendant's motion to declare that she had served her ten-day period of confinement after she was prematurely released for the birth of her child. We affirm the trial court.

The defendant and three codefendants were indicted for the Class E felony of vandalism of property worth more than five hundred dollars but less than one thousand dollars and the misdemeanors of assault and theft of property valued at less than five hundred dollars. Upon an agreement with the state, the defendant entered guilty pleas to misdemeanor vandalism and misdemeanor theft and agreed to the sentences that were imposed. Her convictions relate to the destruction of an automobile and the theft of a rifle.

The record reflects that at the guilty plea and sentencing hearing, the defendant was

seven to eight months pregnant with an expected delivery date of January 24, 1996. Because of her need to visit her doctor, the defendant requested that she be allowed to serve her sentence on weekends or to delay service for six months after she gave birth. The trial court denied the request, stating that if the defendant needed to see her doctor during confinement, a furlough could be granted. The defendant was ordered to start her sentence on December 1, 1995.

On December 1, 1995, the defendant reported to the Carroll County Jail and began serving her sentence at 6:00 p.m. On her third day of confinement, December 4, 1995, the defendant began showing signs of labor at approximately 1:00 a.m. The jailer and a deputy transported the defendant to Methodist Hospital in McKenzie, Tennessee, at 3:40 a.m. The hospital determined that the defendant had to be transported to a hospital in Jackson, Tennessee, because the baby was in breech. At 4:55 a.m., the Carroll County Sheriff's Department released the defendant from custody. The defendant was then transported to the hospital in Jackson, apparently by ambulance.

On January 8, 1996, the state made an oral motion to grant the defendant a medical furlough. Over the objection of the defendant's trial counsel, the trial court granted the state's motion, stating that "this was a matter, I think, that was addressed to the Court. . . . And I said she could be released under these medical conditions. There should have been an order to that effect." Because the defendant was not present at the hearing, the trial court continued the case to February 14, 1996, to determine when the defendant could begin serving the remainder of her sentence. On January 24, 1996, the trial court entered an order granting the defendant a medical furlough as of December 4, 1995, finding that it was necessary to release her from jail at 4:55 a.m. due to premature labor.[1]

On February 13, 1996, the defendant filed a motion and memorandum to declare her sentence served or, in the alternative, a mo-

tion for habeas corpus relief. A hearing on the motion was conducted on February 14, 1996. At the hearing, Lisa Byars, who was employed as a jailer for the Carroll County Sheriff's Department at the time of the defendant's incarceration and release, testified that the defendant began showing signs of labor at approximately 1:00 a.m. on December 4, 1995. She said that at that time she called the chief jailer and the nurse assigned to the Carroll County Jail, and they told her to observe the defendant. During this period, the defendant asked her whether she would be taken to the hospital. After obtaining approval from the chief jailer, Jailer Byars and another deputy transported the defendant to the hospital around 3:30 a.m. Jailer Byars stated that she stayed with the defendant and the deputy remained in the front part of the hospital. She testified that the deputy later informed her that he had spoken to the chief jailer who had determined that it was necessary to release her because she was in labor.

At 4:55 a.m., Jailer Byars released the defendant from the custody of the Carroll County Sheriff's Department. Jailer Byars stated that the reason the defendant was being released was because the defendant had to be transported to a hospital located in Jackson due to complications with her delivery. Jailer Byars said that she did not tell the defendant anything regarding the service of the remainder of her sentence.

The defendant testified that although she requested that she be taken to the hospital, she did not ask to be released from custody or to be given a medical furlough. However, on cross-examination she admitted that she expected to be released to obtain medical attention for her delivery.

The trial court denied the defendant's motion to declare her sentence served or, in the alternative, a motion for habeas corpus relief, setting forth several reasons for its decision:

(1) it was medically necessary that the defendant be granted a furlough;

---

1. The order was signed by the trial court and the district attorney but not by counsel for the defendant.

(2) the Carroll County Sheriff's Department was "acting in good faith and out of human concern" for the defendant when they granted a medical furlough; and

(3) the defendant's legal sentence had not expired.

The trial court ordered that the defendant be taken into custody to begin serving the remainder of her sentence. It is from this decision that the defendant appeals.

# I

The defendant contends that the trial court erred by ordering her to serve the balance of her ten-day confinement in the Carroll County Jail. She asserts that she continued to serve her sentence after she had been released. This claim is based on her argument that she should have been given credit for time at liberty following her release from custody.

█ Credit for time at liberty is a legal doctrine that holds that "a convicted person is entitled to credit against his sentence for time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own." *United States v. Martinez*, 837 F.2d 861, 864 (9th Cir.1988). Our supreme court noted the doctrine in *State v. Walker*, 905 S.W.2d 554, 556 (Tenn. 1995), but made no mention of its adoption in Tennessee.

In *Walker*, the defendants were each convicted of driving under the influence and sentenced to eleven months and twenty-nine days, all suspended except for twenty days. The defendants reported to the sheriff's office to begin their sentence, but were not taken into custody. They were told that there was no space available and that they would be notified when to report. After almost two years for one defendant and one year for the other, the sheriff's office told the defendants to report to the jail to begin serving their sentence. The issue in *Walker* concerned the status of a sentence after a defendant reported to the sheriff for the purpose of serving the sentence but was turned away by the sheriff on the basis of jail overcrowding. In its analysis, the court

reviewed various doctrines used by other jurisdictions when a prisoner has been erroneously released, such as due process waiver, estoppel, and credit for time at liberty. 905 S.W.2d at 555–56. However, the court did not invoke any of those doctrines to resolve the case.

After concluding that there was no uniform standard applicable to a delay in the beginning of the execution of a sentence because of jail overcrowding, the court relied on statutory analysis of the sheriff's duties. As a result, noting that the sheriff has a duty to "execute the judgment of imprisonment by committing the defendant, as soon as possible, to jail," *see* T.C.A. § 40-23-103, and that the sheriff has the authority "to convey prisoners to the nearest jail 'sufficient' for their safekeeping," *see* T.C.A. § 41-4-121, our supreme court held that when a convicted person is turned away after presenting him or herself for immediate incarceration, the sentence begins to run when the judgment of conviction becomes final or the person is incarcerated, whichever occurs first. 905 S.W.2d at 556–57.

# II

Under the circumstances in this case, we do not believe that due process waiver or estoppel doctrine should be invoked. Likewise, the circumstances do not call for our adopting the doctrine of credit for time at liberty, especially given Tennessee precedent. In *State ex rel. Johnston v. McClellan*, 87 Tenn. 52, 9 S.W. 233 (1888), the defendant, sentenced to twenty-one years, was released early due to the misapplication of a new statute that allowed "good time" credits for prisoners. After a year at large, he was reincarcerated. Our supreme court ruled that the defendant was not entitled to credit for the time at liberty because imprisonment is "confinement in fact, not in legal or other fiction." *Id.* at 55, 9 S.W. at 234. It determined that even though the defendant was erroneously released, the time spent out of custody could not be counted towards his sentence. *Id.* This ruling reflects the common law rule that a defendant must be in prison for the term of the sentence, regardless of any lapse of time out of prison. *See*

*Martinez,* 837 F.2d at 864 (9th Cir.1988). Thus, under common law, a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed.

■ However, courts began examining the totality of the circumstances surrounding the nonservice of the sentence to determine whether reincarceration is fundamentally fair. *See Johnson v. Williford,* 682 F.2d 868, 873 (9th Cir.1982). As a result, the due process waiver doctrine was used to prevent recommitment when the government has waived the right to recommit "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Green v. Christiansen,* 732 F.2d 1397, 1399 (9th Cir.1984). However, more than a mistake by someone in a ministerial capacity is needed to excuse a convicted person from serving his sentence under this doctrine. There must be no fault by the defendant, there must be more than simple negligence by the government, and the defendant's reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.'" *United States v. Merritt,* 478 F.Supp. 804, 807 (D.D.C.1979).

■ In other words, when reincarceration is fundamentally unfair, a due process violation occurs. As for the present case, though, we do not believe that the facts support a due process violation. The defendant was released from custody because of premature labor. The sheriff's actions in releasing the defendant to receive necessary medical attention, unavailable in his county, is not "so affirmatively wrong ... that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require" the defendant to complete her sentence. *Walker,* 905 S.W.2d at 557 (quoting *Mobley v. Dugger,* 823 F.2d 1495, 1496–97 (11th Cir. 1987)).

■ The doctrine of estoppel has been developed to prevent recommitment "where justice and fair play require it." *Johnson,*

682 F.2d at 871 (9th Cir.1982). Estoppel has the following elements:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

*Green,* 732 F.2d at 1399 (citing *Johnson,* 682 F.2d at 872). Given its basis of justice and fair play, we believe that estoppel is, likewise, based upon fundamental fairness through due process.

■ In any event, we do not believe that estoppel is warranted in the present case. When the defendant was released from custody in order to be transported to a hospital in a neighboring county, she was not told anything regarding serving the remainder of her sentence. In fact, she admitted that she expected to be released to be able to obtain medical care. The defendant has not suffered any injury through reliance on any statement or conduct of the sheriff's department. Thus, the elements of the doctrine of estoppel have not been met.

The doctrine of credit for time at liberty has been called an exception to the common law rule that the defendant must be confined for the term of his or her sentence, regardless of any lapse of time out of prison. *See Martinez,* 837 F.2d at 864. It is said to have evolved from *White v. Pearlman,* 42 F.2d 788 (10th Cir.1930). *See Green,* 732 F.2d at 1400; *Merritt,* 478 F.Supp. at 806. In *Pearlman,* the defendant was erroneously released, even after he tried to bring the mistake to the warden's attention. After being at large for two years, the defendant was arrested and imprisoned. The court held that when a prisoner is released early, through no fault of his own, and without violating parole, the prisoner's sentence continues to run while he is at liberty. 42 F.2d at 789. The Court stated that a prisoner cannot be required to serve his or her sentence in installments. *Id.*

■ The defendant in the present case asserts that she is entitled to application of the doctrine of credit for time at liberty so as

to have her sentence to confinement deemed completed. However, we do not believe that the doctrine applies under Tennessee law nor would it under the circumstances in this case.

First, we note that the present sentencing statutes preserve the core of the common law rule, save specified exceptions. The defendant, as a misdemeanant, is responsible for her "entire sentence undiminished by sentence credit *of any sort* except for credits" relative to pretrial jail credit, mental examinations and treatment, and either good time or work program credits. T.C.A. § 40–35–302(b) (emphasis added). By its terms, the statute confirms the common law rule by making the defendant responsible for her complete sentence regardless of any credits, save those specified. We acknowledge that the sheriff is obligated to execute the judgment of imprisonment by committing the defendant and to keep a confined prisoner in his or her custody. *See, e.g.,* T.C.A. §§ 40–23–101, –103 and 41–4–101. However, this does not diminish the defendant's obligation to serve the sentence of confinement imposed. Under these circumstances, we view our supreme court's holding in *State ex rel. Johnston v. McClellan* to apply. Thus, the doctrine of credit for time at liberty does not exist in Tennessee.

■ In any event, we do not believe the doctrine would require relief under the circumstances in this case. At the time of sentencing, the trial court stated that a furlough would be granted to the defendant for medical purposes, a furlough authorized by law. *See* T.C.A. §§ 40–35–316 and 41–2–128. The defendant's initial hospitalization, necessary for the birth of her child, was under the Carroll County Sheriff's custody. At that time, the parties were notified of the need to send the defendant to a better-equipped hospital in another county because the fetus was in the breech position. Needless to say, this was an emergency medical situation with time being of the essence.

With this medical emergency, the sheriff's legal options were limited. Under T.C.A. § 41–4–121(a), the sheriff has legal authority to convey a prisoner to the nearest sufficient jail, including in another county, if his or her jail is insufficient for the safekeeping of a prisoner. In this sense, the inability of the county to supply immediate medical needs might fall into this category. In reality, though, the defendant was already in, and would remain in, the hands of medical personnel and a physical transfer of the defendant to another jail was impossible. Otherwise, the sheriff was left with the choice of seeking judicial order for a furlough or other release for medical purposes. *See, e.g.,* T.C.A. §§ 40–35–316 and 41–2–128. Obviously, an early morning telephone call by the sheriff's office to the trial court would have resulted in a furlough authorization.

However, we do not believe that the failure to get specific furlough authorization from the trial court at the time of the defendant's "release" from the sheriff's custody reflects "negligence" in the release because of the medical emergency at hand. Rather, it was a release of necessity to save the defendant's and her child's lives. Also, with the defendant being aware that the trial court would grant her a furlough for medical purposes, but not for an extended time with the child, we do not see how she could reasonably expect or consider her time of confinement to continue running after her release. Thus, she would not be entitled to credit for time at liberty.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

JONES, P.J., and SMITH, J., concur.