**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT NASHVILLE**
**MAY SESSION, 1999**

FILED

June 29, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 01C01-9807-CC-00285 |
| **Appellee** | ) | |
| | ) | **RUTHERFORD COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. J. Steve Daniel, Judge** |
| **TERRY C. MEADORS,** | ) | |
| | ) | **(Status of Confinement)** |
| **Appellant** | ) | |

For the Appellant:

**Jim Wiseman**
**Sally Schneider**
Attorneys for Appellant
131 North Church Street
Murfreesboro, TN  37130

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Marvin E. Clements, Jr.**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**William C. Whitesell, Jr.**
District Attorney General
3rd Floor, Rutherford Co. Judicial Bldg.
Murfreesboro, TN  37130

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Terry C. Meadors, appeals the order entered by the Rutherford County Circuit Court returning him to confinement after his inadvertent release by the Sheriff's Department. While serving sentences in the Rutherford County Workhouse, the appellant escaped. After his return to confinement, he pled guilty to escape and received an 18 month sentence as a range I offender. This sentence, entered December 11, 1996, was ordered to be served consecutively to a prior sentence the appellant was serving at the time of his escape. On June 23, 1997, the appellant was granted probation for those sentences he was serving prior to his escape. Notwithstanding the TDOC detainer for escape, the appellant, on June 23, 1997, was inadvertently released from his confinement in the Rutherford County Workhouse.

During a routine file check, Linda Boyle, a supervisor at TDOC, discovered that the appellant had never served his 18 month sentence. A hearing was held in the Rutherford County Circuit Court on May 11, 1998, to determine whether the appellant should be returned to confinement.[1] At the conclusion of the hearing, the trial court held that the appellant's consecutive sentence for escape began to run on June 23, 1997, when he was erroneously released from the custody of the workhouse. As such, the court concluded that the appellant's entire 18 month sentence remained unserved. Indeed, "[t]he 18 month sentence in this case would expire on December 23, 1998." See State v. Walker, 905 S.W.2d 554, 556 (Tenn. 1995) ("where persons under a criminal sentence immediately present themselves to the appropriate authority for incarceration and are turned away, the sentence in each case begins to run when the judgment of conviction becomes final or the defendant is actually incarcerated, whichever is earlier"). Accordingly, the court

---

[1]On the date of the hearing, the appellant had been released from the workhouse for 334 days and, apparently, had successfully completed his 307 days probation on those sentences he had been serving prior to his escape.

2

ordered the appellant to begin service of his 18 month sentence for escape and gave the appellant until June 11, 1998, to report to the workhouse.

Although the appellant concedes that his 18 month sentence for escape began to run on June 23, 1997, he contends that release was due to no fault of his own, and, therefore, he should be given jail credit for the approximate 10.5 months he remained at liberty. Relying upon the doctrine of "credit for time at liberty," he asserts that a range I offender serving an 18 month sentence would receive mandatory probation after completion of 30 percent service, or 5.4 months. Accordingly, he argues that he is entitled to immediate release on probation.

**Analysis**

American courts have articulated three principal theories under which an inmate who is erroneously released from confinement may be entitled to relief. Two of these theories, waiver of jurisdiction and estoppel, stem from one's right to due process; the third theory, the doctrine of "credit for time at liberty," was judicially created out of concerns for basic "fairness."

Under the waiver of jurisdiction theory, the government waives the right to reincarcerate when its' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in its aftermath. See State v. Chapman, 977 S.W.2d 122, 126 (Tenn. Crim. App. 1997), perm. to appeal denied, (Tenn. 1998); Green v. Christiansen, 732 F.2d 1397, 1399 (9th Cir. 1984)( citation omitted). Similarly, under the estoppel theory, the government is estopped from reincarcerating an inmate when:

> (1) the party to be estopped must know the facts; (2) he must intend
> that his conduct shall be acted upon or must act so that the party

asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

Christiansen, 732 F.2d at 1399 (citations omitted). An inmate must meet all four criteria to invoke the remedy of estoppel. It is apparent from a reading of the record before us that neither the waiver of jurisdiction theory, which is predicated upon principles of gross negligence, nor the estoppel theory, which requires affirmative misconduct, is applicable to this case. See, e.g., Chapman, 977 S.W.2d at 126.

Although the due process claims of waiver of jurisdiction and estoppel are inherent in any review of a prisoner who is discharged or released from confinement by mistake, the appellant, in the case *sub judice*, argues for application of the doctrine of "credit at time at liberty." See Walker, 905 S.W.2d at 556. This doctrine, based upon notions of fairness, provides that, "a convicted person is entitled to credit against his sentence for time when he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own," *in other words*, his sentence continues to run while he is at liberty. See Chapman, 977 S.W.2d at 125 (quoting   See United States v. Martinez, 837 F.2d 861, 864 (9th Cir. 1988); Walker, 905 S.W.2d at 556 (citing Christiansen, 732 F.2d at 1397; Smith v. Swope, 91 F.2d 260 (9th Cir. 1937)).

Notwithstanding adoption of this legal doctrine by several of our sister states and by the federal courts, the state of Tennessee has rejected application of this doctrine. Chapman, 977 S.W.2d at 127. In Chapman, a panel of this court determined that this doctrine is a departure from the common law which provides that "a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." Chapman, 977 S.W.2d at 126. Accordingly, the rationale of State ex. rel. Johnston v. McClellan, 87 Tenn. 52, 9 S.W. 233 (1888), remains viable, that is, "[a] defendant is not entitled to credit for the time at liberty

4

because imprisonment is 'confinement in fact, not in legal or other fiction.'" Chapman, 977 S.W.2d at 125 (citing State ex. rel. Johnston v. McClellan, 87 Tenn. at 55, 9 S.W. at 234). "A defendant must be in prison for the term of the sentence, regardless of any lapse of time out of prison," Chapman, 977 S.W.2d at 125 (citing Martinez, 837 F.2d at 864), because a judgment of sentence can only be satisfied with a term of imprisonment. See Commonwealth v. Blair, 699 A.2d 738, 740 (Pa.Super. 1997) (citations omitted).

Despite the appellant's reliance on judicial precedent from sister states and his argument asking this court to distinguish his case from Chapman, we find no reason to depart from the sound logic and reasoning applied by this court in refusing to adopt the legal doctrine of "credit for time at liberty." It serves neither the public's interest nor their protection to permit an inadvertent error on behalf of the State to cancel any part of a prisoner's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that those who commit crimes are serving the punishment to which they have been sentenced regardless of negligent error attributed to the government. The fact remains that the appellant has not served the time he was ordered to serve.

As such we conclude that, although the appellant's release was through no fault of his own, the release was the result of simple negligence of the State and the appellant is not entitled to credit for time spent at liberty. The judgment of the trial court ordering that the appellant serve his sentence of confinement is affirmed.

_____
DAVID G. HAYES, Judge

5

CONCUR:


_____
JERRY L. SMITH, Judge


_____
NORMA MCGEE OGLE, Judge