IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 2000 Session

# WILLIAM ANDREW DIXON v. DONAL CAMPBELL, COMMISSIONER, TENNESSEE DEPARTMENT OF CORRECTION

Appeal from the Chancery Court for Davidson County
No. 98-3761-II    Carol L. McCoy, Chancellor

---

### No. M1999-02122-COA-R3-CV - Filed August 9, 2000

---

A prisoner serving a life sentence petitioned the court to order the Department of Correction to restore sentence reduction credits it had deleted from his record after determining that his sentence was to be served without the possibility of parole. The trial court dismissed the petition. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, William Andrew Dixon.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; and Pamela S. Lorch, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Conviction, Sentencing and Appeal

In 1978, William Dixon was indicted for the crime of kidnapping for ransom. Under the kidnapping statute in effect at that time, Tenn. Code. Ann. § 39-2603 (now repealed), conviction of that crime was punishable by "death in the electric chair or . . . imprisonment in the state penitentiary for life or for a term of years not less than twenty (20) without possibility of parole, at the discretion of the jury trying the same." Mr. Dixon pled guilty pursuant to a plea bargain, and was sentenced to 35 years with the possibility of parole.

Shortly after he began serving his sentence, the Department of Correction notified him that its interpretation of the kidnapping statute did not permit parole consideration, and therefore that he would never become eligible for parole. Mr. Dixon filed for post-conviction relief on the ground

that his guilty plea was involuntary because it was predicated upon eligibility for parole. The trial court agreed. After a hearing, the trial court vacated his conviction and ordered a new trial.

Between his first conviction on a guilty plea and his retrial, the kidnapping statute was amended. Under the new version of Tenn. Code. Ann. § 39-2603, effective September 1, 1979, the offense of kidnapping for ransom was subsumed under the offense of aggravated kidnapping. The offense was made a Class X felony, and references to the unavailability of parole were dropped from the statute.

Mr. Dixon was tried and convicted in April of 1981. The verdict and judgment form states that the jury found him guilty of kidnapping for ransom, and that it fixed a penalty of life imprisonment for the offense. Mr. Dixon was also found guilty of using a firearm while in the commission of the crime of kidnapping and was sentenced to an additional five years for that offense. The form does not indicate whether or not Mr. Dixon would ever be entitled to parole.

Mr. Dixon filed a direct appeal of his conviction in the Court of Criminal Appeals, in which he raised the question of whether one who has been convicted of kidnapping for ransom may be considered for parole, after becoming eligible under the general parole statutes. Those statutes apparently provided that an individual sentenced to life could be paroled after serving thirty years, minus any good and honor time earned.

The Court of Criminal Appeals conducted a close analysis of the language of the repealed version of Tenn. Code. Ann. § 39-2603, and held that the discretion exercisable by the jury under that statute extended only to the length of the sentence, and not to the question of parole. The Court accordingly affirmed the judgment of conviction for kidnapping for ransom, and the life sentence without possibility of parole. Mr. Dixon did not raise, nor did the court consider, the effect of the 1979 amendment to the kidnapping statute upon the sentencing options that had been available to the trial court. *State of Tennessee v. Dixon*, No. 11930 (Tenn. Crim. App. at Nashville, filed April 18, 1982).

## II. Sentence Reduction Credits

In 1985, the legislature enacted Tenn. Code. Ann. § 41-21-236 in response to prison overcrowding. The statute created a new scheme whereby prisoners who exhibited good institutional behavior could be awarded credits for such behavior that would reduce the length of their sentences. Section (c)(3) of that statute reads,

"Any person who committed a felony, including any Class X felony, prior to December 11, 1985, may become eligible for the sentence reduction credits authorized by this section by signing a written waiver waiving the right to serve the sentence under the law in effect at the time the crime was committed."

In 1988, Warden Billy McWherter sent a letter to Corrections Commissioner Stephen Norris identifying ten prisoners in the warden's charge, including William Dixon, who had not been

properly informed of their right to sign a waiver and receive sentence reduction credits, and asking that they be included in the program. Prison officials subsequently explained the sentence credit program to Mr. Dixon, and gave effect to his signed waiver, allowing him to earn sentence reduction credits and other benefits retroactive to March 1, 1986.

Because of his outstanding disciplinary record over the following ten years, Mr. Dixon accumulated over 2,100 days of sentence reduction credits. He also earned trustee status, became active in volunteer programs and the prison newspaper, and completed some college courses.

In 1998, Mr. Dixon was scheduled for his first hearing before the parole board. Pursuant to statute, the warden contacted the sentencing judge, to solicit his opinion of the appropriateness of granting parole. The judge responded that it was his understanding that Mr. Dixon had been sentenced to life without the possibility of parole. The Department of Correction immediately canceled Mr. Dixon's upcoming parole hearing, deleted all his sentence reduction credits, and amended its records to reflect that he was serving a life sentence without possibility of parole.

Mr. Dixon filed a Petition for a Declaratory Order, asking the Department to restore his parole date and his sentence reduction credits. The petition was dismissed. On December 18, 1998, Mr. Dixon filed a Complaint for Declaratory Judgment in the Chancery Court of Davidson County, naming the Commissioner of Correction as respondent in his official capacity. Mr. Dixon asked the court to order the Department to restore his parole-eligibility date, his sentence reduction credits, and his right to earn future behavior and program sentence reduction credits.

The Commissioner of Correction filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6). On October 7, 1999, the trial court granted the Commissioner's motion, and dismissed Mr. Dixon's complaint. This appeal followed.

### III. Arguments on Appeal
### a. The Sentence

Mr. Dixon argues on appeal that the court that sentenced him did not have jurisdiction to impose a sentence of life without the possibility of parole, because the legislature had altered the punishment for his crime prior to trial. He relies upon Tenn. Code. Ann. § 39-114 [now codified at Tenn. Code. Ann. § 39-11-112] which reads,

> **Repealed or amended laws – Application in prosecution for offense.–** Whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by the statute or act being repealed or amended, committed while such statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. In the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act. [Acts 1968 ch. 513, § 1]

The appellant points out that the trial court issued a Verdict and Judgment Form which actually was consistent with the 1979 amendment to the kidnapping statute, because it fixed his punishment at life imprisonment, without making any reference whatsoever to parole. He argues that the trial judge and the Court of Criminal Appeals ignored both the plain language of the judgment and the 1979 amendment to the statute, and erroneously interpreted his sentence to require that it be served without parole.

We concede that the 1982 opinion of the Court of Criminal Appeals does not mention the 1979 amendment, and appears to be based solely upon an unrelated sentencing issue. However, this court has no more power to correct an erroneous judgment issued by the Court of Criminal Appeals than that court has to correct our judgments. Therefore, we are compelled to recognize that court's affirmation of Mr. Dixon's life sentence without the possibility of parole.

The jurisdictions of the intermediate appellate courts in this state are designed to be distinct from one another, with a minimum of overlapping. The jurisdiction of the Court of Appeals does not include matters of criminal law. *See* Tenn. Code. Ann. § 16-4-108. The Court of Criminal Appeals has broad jurisdiction over criminal cases. Tenn. Code. Ann. § 16-5-108(a). This includes, we believe, the power to correct an illegal sentence at any time. *See State v. Burkhart*, 566 S.W.2d 871 (Tenn. 1978). If Mr. Dixon is entitled to have his sentence corrected, then it must be done in the Court of Criminal Appeals, or in another court of competent jurisdiction.[1]

## b. The Waiver Statute

Mr. Dixon argues on appeal that even if we find he was validly sentenced to life without the possibility of parole, he is still entitled to the benefits of the waiver statute. The appellant points out that by its terms, Tenn. Code. Ann. § 41-21-236(c) is applicable to "any person who committed a felony, including any Class X felony, prior to December 11, 1985," and who signs a waiver of his "right to serve his sentence under the law in effect at the time the crime was committed."

Mr. Dixon argues that the only exception to this rule of universal eligibility are prisoners housed in maximum security facilities, such as death row inmates, and prisoners being held in punitive segregation. *See* Tenn. Code. Ann. § 41-21-236(a)(7). Since the legislature could have added to its list of exceptions the category of "sentences not eligible for parole", but did not do so, Mr. Dixon contends that under well-established principles of statutory construction the Department of Correction had the legal authority to accept his waiver, and to make it possible for him to earn sentence reduction credits.

_____

[1] As a supplement to Mr. Dixon's brief we have been provided a portion of the State's brief in a pending appeal of a habeas corpus proceeding. In that brief, the State notes that in the case before us "petitioner candidly admitted that the judgment reflects a sentence of life, as opposed to a sentence of life without parole." In that brief, the State appears to be taking the position that Mr. Dixon was sentenced to a life sentence with no prohibition on his parole, or more technically, that the trial court's judgment reflects only that the sentence was life imprisonment without mention of parole. The State has argued in the appeal before us that Mr. Dixon was sentenced to life without parole. We have determined that we are bound by the Court of Criminal Appeals' interpretation of Mr. Dixon's sentence. We believe the State is similarly bound.

But if a sentence of life without the possibility of parole is to have any meaning, it cannot be so easy to transform into something else. It appears to us that if the legislature intended to grant parole eligibility to felons serving valid sentences of life without the possibility of parole, they would have had to do so explicitly, and not by implication.

Another problem with the appellant's argument is that because of the nature of sentence reduction credits, parole eligibility is a prerequisite to their operation. Such credits accelerate the release eligibility date that is built into the prisoner's sentence. Even an ordinary life sentence includes a release eligibility date. But by definition, the sentence that Mr. Dixon is serving does not.

### c. Estoppel

Finally, the appellant contends that even if this court determines that the 1985 waiver law did not properly apply to him, the Department of Correction should still be estopped by its conduct to deny him the benefits of the waiver. He contends that by giving him the chance to earn sentence credits towards a parole eligibility date, the Department made him ineligible for participation in the system-wide recalculation of sentence eligibility dates conducted by the Parole Eligibility Review Board, and thus denied him an avenue of relief for which he would otherwise have been eligible. Tenn. Code. Ann. § 40-35-601, et seq.

The elements of estoppel are listed in *State v. Chapman*, 977 S.W.2d 122, 126 (Tenn. Crim. App. 1997) as follows:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

We do not find the above elements to be present in this case. There is no proof that the Department officials who offered Mr. Dixon the waiver knew that he was ineligible for parole when they made the offer, or that they intended to mislead him. It can be reasonably inferred, however, that Mr. Dixon knew that the Court of Criminal Appeals had declared his sentence to be without parole eligibility, and so he cannot claim to have been ignorant of that fact when he signed the waiver.

Finally, Mr. Dixon's argument that he was injured by relying on the Department's conduct rests on the premise that the Parole Eligibility Review Board would have established a parole eligibility date for him if he had not signed the waiver. But not only is it uncertain what the Board would have done, it is also unclear whether the Board's admittedly broad authority to amend release eligibility dates included the power to declare a felon to be eligible for release after having been sentenced to serve a life sentence without the possibility of parole.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, William Andrew Dixon.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.