IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 25, 2006 Session

## STATE OF TENNESSEE v. DONNIE JOE HENSLEY

**Appeal from the Criminal Court for Greene County**
**No. 04CR208     James E. Beckner, Judge**

---

**No. E2005-01444-CCA-R3-CD - Filed August 7, 2006**

---

The defendant, Donnie Joe Hensley, appeals from his Greene County Criminal Court jury conviction of first degree murder. He claims on appeal that the trial court erred (1) in failing to dismiss the indictment because the juvenile court had transferred his case to criminal court without appointing a guardian ad litem, (2) in refusing to remand to juvenile court because a prosecution witness had lied in the juvenile court transfer hearing, and (3) in refusing to extend the plea cut-off date until the defendant attained his 18th birthday. The defendant also claims that the evidence is legally insufficient to support the conviction of premeditated first degree murder. We find no reversible error and affirm the judgment of the criminal court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

William Louis Ricker and Kim C. Miller, Greeneville, Tennessee, for the Appellant, Donnie Joe Henlsey.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Cecil Mills, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The evidence at trial described the grisly murder of the victim, 18-year-old Billie Jo Hensley, on May 2, 2004. Hugh Alexander Williams, age 18, testified that he had been charged along with the defendant for the homicide; he had pleaded guilty to second degree murder in exchange for his truthful testimony in the defendant's trial. Mr. Williams testified that, about a month before the murder, he, the defendant, and two other associates, Michael Sellers and Latonya Crockett, discussed killing the defendant's mother, his mother's boyfriend, and the victim, who was the defendant's sister. The defendant believed that by killing the other members of his household,

he could obtain marijuana and $15,000 in cash that he believed his mother's boyfriend, who sold marijuana, kept in the locked basement of the residence.

Mr. Williams testified that, on May 2, 2004, the defendant called him and said "today is the day" to kill the defendant's family. The timing was prompted when the defendant's mother and her boyfriend took a trip to Kentucky, thus allowing him to kill his sister without interference. Mr. Williams testified that the defendant had agreed to pay Sellers and Crockett $1,000 each from the proceeds of the crimes if they would serve as look-outs. Mr. Williams testified, "I inserted myself." He asked the defendant for $3,000 from the proceeds. The defendant agreed and stated that he was going to kill his sister with a knife.

Mr. Williams testified that he, Sellers, Crockett, and the defendant rode around in a car, ingested some Valium pills and marijuana, and bought some "rubber" gloves and a telephone card. Mr. Williams and the defendant entered the residence where the defendant and the victim lived. The defendant told Mr. Williams to call the victim out of her bedroom, and when she emerged into the hall, the defendant attacked her from behind with a sword. The defendant initially stabbed the victim through the neck and then used a hunting knife to stab the victim several times. The defendant told Mr. Williams to help him, and Mr. Williams used his pocket knife to stab the victim. He estimated that the victim was stabbed 50 to 60 times.

Through a means devised by Mr. Williams to use the telephone card to call his aunt and to have her call Sellers' cellular telephone, Mr. Sellers was alerted to come to the defendant's house. Mr. Sellers and Ms. Crockett arrived within ten minutes of Williams' initial call. The young men broke into the basement but found neither money nor marijuana. When Mr. Sellers became distressed and cried, he and Ms. Crockett drove away, leaving Mr. Williams and the defendant without transportation. The pair tried to clean the murder weapons in the bathroom and left the house by foot. As they crossed a bridge at nearby Lick Creek, they threw the knives, Mr. Williams' jacket, and the gloves into the creek. They walked to the home of an acquaintance, Gail Reynolds, who drove the pair to Mr. Williams' house. There, Mr. Williams used gasoline to burn their clothing.

Mr. Williams testified that the defendant began to talk of suicide. Within a few hours, the police came to the Williams' residence and arrested both young men. Mr. Williams took the officers to the creek and showed them where the implements of the crime had been thrown.

The investigating police officers found the victim's body lying in the living room floor. They found the odor of bleach and a bloody towel in the bathroom and latex gloves in the bathtub. The basement door had been "busted open," and in the basement, they found drug paraphernalia, including plastic bags, scales, and hemostats. Inside a stove in the basement, they found marijuana and rolls of quarters.

The officer who transported the defendant to the jail introduced into evidence a compact disk on which he had recorded part of his en route conversation with the defendant. At one

point, the defendant said, "[M]ental health's told me that if I didn't learn to control my emotions that I would wind up in jail. . . . And it looks like that's happened."

Other prosecution witnesses established that the murder weapons were recovered from Lick Creek, about one-fourth of a mile from the homicide scene. Forensic examination revealed no fingerprints on the recovered items but established that the burned refuse found at Mr. Williams' house had been clothing. DNA testing revealed that blood stains found on Mr. Williams' hand contained his blood as well as blood from the victim and the defendant. A yellow bracelet worn by the defendant bore a sample of the victim's blood. Ms. Reynolds testified that she furnished the defendant and Mr. Williams a ride to the latter's house on the afternoon of May 2, 2004. Medical evidence showed that the victim sustained 151 stab wounds, 37 of which penetrated her torso. Several punctured her lungs, heart, and liver. She sustained a head puncture that entered her brain and a stab that traveled completely through her neck. Several of the wounds were consistent with wounds that could be inflicted with the hunting knife that had been found in the creek.

The defendant offered no evidence. The jury found the defendant guilty of premeditated first degree murder, and the trial court imposed a life sentence without the possibility of parole. Following the court's overruling of the motion for new trial, the defendant perfected a timely appeal.

## I. Procedure in Juvenile Court

The defendant, who was a juvenile at the time of the homicide, is aggrieved that the juvenile court transferred his case to criminal court without appointing a guardian ad litem. He acknowledges that the juvenile court did appoint an attorney to represent him at the transfer hearing, but he posits that his mother, his only living parent, was not only the victim's mother but was also targeted to be killed. For these reasons, the defendant argues, his mother could not have discharged the role of a parent to him during the juvenile court process, necessitating the appointment of a guardian ad litem, as required by rule and as a function of due process of law. The state counters that the defendant never raised an issue of conflict of interests of his mother, who apparently attended the transfer hearing, and the juvenile court never had the opportunity to evaluate the need for a guardian ad litem. The state also claims that the requirement of a guardian ad litem does not apply to juvenile court transfer hearings; rather, the appointment of counsel is the specified means of protecting a juvenile's interests in a transfer hearing. At any rate, the state claims the denial of a guardian ad litem in the juvenile court transfer hearing does not deprive the criminal court of jurisdiction of the transferred case.

Prior to trial, the criminal court heard arguments on the defendant's motion to dismiss. In denying the motion, the trial judge said, "[I]t would be redundant to have a guardian ad litem. A guardian ad litem cannot function in any way to do anything more than or even as much as appointed counsel." The court noted that the defendant enjoyed the benefit of "very able" counsel in juvenile court.

Tennessee Code Annotated section 37-1-134 governs the transfer of the prosecution of a juvenile to criminal court and provides in pertinent part:

> (a) After a petition has been filed alleging delinquency based on conduct that is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction. The disposition of the child shall be as if the child were an adult if:
>
> > (1) The child was sixteen (16) years or more of age at the time of the alleged conduct, or the child was less than sixteen (16) years of age if such child was charged with the offense of first degree murder, second degree murder, rape, aggravated rape, rape of a child, aggravated robbery, especially aggravated robbery, kidnapping, aggravated kidnapping or especially aggravated kidnapping or an attempt to commit any such offenses. The district attorney general may not seek, nor may any child transferred under the provisions of this section receive, a sentence of death for the offense for which the child was transferred;
> >
> > (2) A hearing on whether the transfer should be made is held in conformity with §§ 37-1-124, 37-1-126 and 37-1-127;
> >
> > (3) Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and the child's parents, guardian or other custodian at least three (3) days prior to the hearing; and
> >
> > (4) The court finds that there are reasonable grounds to believe that:
> >
> > > (A) The child committed the delinquent act as alleged;
> > >
> > > (B) The child is not committable to an institution for the developmentally disabled or mentally ill; and
> > >
> > > (C) The interests of the community require that the child be put under legal restraint or discipline.
> >
> > . . . .

(e) No child, either before or after reaching eighteen (18) years of age, shall be prosecuted for an offense previously committed unless the case has been transferred as provided in subsection (a).

Tenn. Code Ann. § 37-1-134(a), (e) (2005); *see also* Tenn. R. Juv. P. 24(b)(2)(ii) (directing that, in juvenile court transfer hearing, the "child shall be represented by an attorney").

Tennessee Rule of Juvenile Procedure 37 provides:

(a) <u>Appointment, Generally</u>. In any juvenile proceeding, on application of a party or on its own motion, the court may appoint a guardian ad litem for a child who is a party to the proceeding.

(b) <u>Requirement Where Parent Absent or a Conflict of Interest</u>. The court shall appoint a guardian ad litem for a child who does not have a parent or guardian appearing on the child's behalf or the parent's or guardian's interests appear to conflict with those of the child.

Tenn. R. Juv. P. 37(a), (b). Regarding the conduct of hearings, Tennessee Code Annotated section 37-1-126 provides in pertinent part:

In delinquency hearings or in hearings in which the child is alleged upon three (3) or more court proceedings to be unruly and not amenable to treatment or rehabilitation as specified in § 37-1-132(b), a party is entitled to representation by legal counsel at all stages of any proceedings under this part . . . . In all delinquency hearings, counsel must be provided for a child not represented by such child's parent, guardian, guardian ad litem or custodian.

Tenn. Code Ann. § 37-1-126(a) (2005). A guardian ad litem is a "responsible adult who is appointed by the court to protect the rights and interests of a child during the pendency of a proceeding involving the child and to advocate for the best interests of the child." Tenn. R. Juv. P. 2(7).

The defendant raised the issue of a faulty transfer hearing via a *motion to dismiss* filed pretrial in the conviction court. Generally, a motion to dismiss a criminal prosecution equates to a claim that the trial court lacks jurisdiction to proceed. Our supreme court has addressed the issue of the conviction court's jurisdiction to try and convict a defendant whose case originated in juvenile court. In *Sawyers v. State*, 814 S.W.2d 725 (Tenn. 1991), our supreme court reviewed a petition for post-conviction relief in which Sawyers challenged his first degree murder conviction on the ground that he was a juvenile at the time of the homicide and had not been afforded a transfer hearing in juvenile court. *Id.* at 726. Sawyers received no juvenile court transfer hearing because, at the time, no one, including Sawyers himself, knew his actual date of birth. *Id.* When Sawyers discovered

eight years after his trial that he was actually a juvenile at the time of the homicide, he filed the post-conviction petition. *Id.*

The supreme court rejected any notion that the lack of a transfer hearing deprived the conviction court of jurisdiction. *Id.* at 729 ( "[T]he absence of a transfer order cannot be said to affect the court's subject matter jurisdiction, which, in a real sense, is concurrent with that of the juvenile court as to certain offenses committed by children falling within a specified age span."). The high court noted that "[t]he only requirement . . . is that such proceedings against a juvenile must originate in juvenile court." *Id.* In his brief, the defendant essentially recognizes that the criminal court had jurisdiction to try and convict him. We hold that the criminal court in the present case had subject-matter jurisdiction to try and convict the defendant, whose prosecution began in juvenile court. As such, we find no error in the trial court's denial of *the motion to dismiss*.[1]

Although the *Sawyers* court stated that even the total deprivation of a juvenile transfer hearing did not implicate a lack of the conviction court's jurisdiction, it recognized that "[t]he right involved, although created by statute, is sufficiently fundamental to be considered a matter of due process, in the context of juvenile justice." *Id.* As such, the issue may be cognizable in a post-conviction relief proceeding. The court declined to apply the post-conviction act's waiver provision to deny the claim "where the error is raised at the first opportunity and there is no suggestion of bad faith on the petitioner's part." *Id.* As a matter of post-conviction procedure, the court ruled "that the case must be returned to the trial court for a de novo hearing to determine whether or not Sawyers would have been transferred from juvenile to criminal court, based on the facts existing at the time of his indictment and trial." *Id.* The "non-jurisdictional" feature of *Sawyers* brings us to the implicit crux of the defendant's complaint – that the criminal court simply erroneously determined that the absence of a guardian ad litem in juvenile court did not *justifiy* a remand to that court. With no jurisdictional issue at stake, we conclude that the criminal court was the proper tribunal for initially determining the effect, if any, of the absence of a guardian ad litem in the transfer hearing. Once we distill the claim to this issue, we see that the defendant's opportunity and method to establish a statutory or a due process claim came in the motion proceeding launched in the criminal court. In other words, we do not believe that the defendant may compel the criminal court to remand the case by merely raising the issue without establishing in that court sufficient cause for remand.

We look first at the defendant's claim to relief based upon an asserted violation of Tennessee Code Annotated section 37-1-126(a) and/or Tennessee Rule of Juvenile Procedure 37(b). We conclude that, even if these mandates for appointing guardians ad litem apply in a juvenile transfer hearing where legal counsel is appointed pursuant to Tennessee Code Annotated section 37-1-126(a), the defendant failed to establish an entitlement to relief in the criminal court. The

---

[1]Recognizing that the defendant may rejoin that, even if the trial court properly denied the motion to dismiss, the court should have nevertheless ordered a remand to juvenile court to avail the defendant of a guardian ad litem during a new transfer hearing. We believe, however, that such an action would have been effectively a dismissal from criminal court because it would have surrendered the case to juvenile court, which would have had the power to retain and dispose of the case. We have already opined that the criminal court was not obliged to dismiss the case because it was fully vested with subject matter jurisdiction.

provisions for appointing guardians ad litem in such a context must be viewed as directory only and not mandatory. *See generally State v. Jones*, 729 S.W.2d 683, 685 (Tenn. Crim. App. 1986) (adverting to "general rule in Tennessee that statutory provisions which relate to the mode or time of doing an act to which the statute applies are not to be mandatory, but directory only"). In other legal contexts, the failure of a court or a state functionary to observe a directory provision occasions no relief to the aggrieved party unless the party establishes prejudice, *see, e.g., State v. Allen,* 976 S.W.2d 661, 667 (Tenn. Crim. App. 1997); *State v. Martin*, 634 S.W.2d 639, 643 (Tenn. Crim. App. 1982); *State v. McCray,* 614 S.W.2d 90, 94 (Tenn. Crim. App. 1981) ("The appellant has failed to demonstrate how she was prejudiced by this failure [of the state to list names of its witnesses on the indictment], even though the appellant contends that she was surprised at trial when these witnesses testified."), or bad faith or undue advantage, *Allen*, 976 S.W.2d at 677; *State v. Kendricks,* 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996). Typically, the determination of prejudice, bad faith, or undue advantage is entrusted to the sound discretion of the trial judge. *Kendricks,* 947 S.W.2d at 883.

In the present case, the defendant failed to establish that he was entitled to the appointment of a guardian ad litem or that the criminal court judge abused his discretion in failing to remand the case. To be sure, Tennessee Rule of Juvenile Procedure 37(b) generally requires the appointment of a guardian ad litem when the parent of the child accused of a delinquent act appears to have a conflict of interests; however, even if the requirement applies to a transfer hearing and even if we assume that the relationship of the defendant's sole living parent to the victim appears to be a conflict of interests, the defendant did not show that the appointment of a guardian ad litem would have advanced his interests in any way. He established no basis for a finding that a guardian ad litem would or could have benefitted him in some way that his able counsel could not. He identified no issue – such as diminished mental capacity, emotional impairment, or crisis of confidence – which might have indicated the need for an advocate in addition to his legal counsel. The trial court concluded that the defendant's legal counsel in the transfer hearing fulfilled all of the requirements of an advocate for the defendant, including any requirements that a guardian ad litem might have addressed. The record does not indicate otherwise. We have reviewed the statutory premises for a juvenile's transfer to adult court: the child's age, the application of a qualifying proscriptive statute, certain procedural formalities, a determination of reasonable grounds for finding that the child committed the offense, the child is not committable to a institution for developmental disability or mental illness, and whether community interests require the child's placement in legal restraint or discipline. *See* Tenn. Code Ann. § 37-1-134(a). A legal advocate is typically, if not uniquely, suited to explore, and to advance the child's interests in respect of, these issues. Even if we assume that the issue of developmental disability or mental illness may suggest the aptness of a more personal advocate, the defendant in the present case raised neither issue.

Next, we examine the defendant's claim that he was deprived of due process of law. We of course recognize that the concepts of due process of law found in the Fourteenth Amendment to the federal constitution and the "law of the land" clause of the state constitution require that the state in a criminal case must comport with constitutional due process notions of fundamental fairness. *See* U.S. Const. amend IV; Tenn. Const. Art 1, § 8; *Mu'Min v. Virginia*, 500 U.S. 415, 426,

111 S. Ct. 1899, 1905 (1991); *Spadafina v. State*, 77 S.W.3d 198, 207 (Tenn. Crim. App. 2000); *State v. Chapman,* 977 S.W.2d 122, 126 (Tenn. Crim. App. 1997); *see also, e.g., State v. McKnight*, 51 S.W.3d 559, 567 (Tenn. 2001) (general due process incorporates "fundamental principles of liberty and justice"); *State v. Frasier*, 914 S.W.2d 467, 470 (Tenn. 1996) (stating that general due process is a requirement of fundamental fairness).[2] That said, the record in the present case evinces no showing that fundamental fairness was offended when the juvenile court conducted a transfer hearing without appointing a guardian ad litem. We have above mentioned the factors that belie any operative issue to be addressed by a guardian ad litem, and our observations apply with equal force here. Fundamental fairness is not offended when, as here, the accused juvenile receives the benefit of able legal counsel during the transfer procedure.

We recognize that, in *Sawyers*, our supreme court in a post-conviction appeal remanded the case to the trial court for a determination whether the juvenile court, following a transfer hearing, would have transferred Sawyers' case to the trial court. *See Sawyers*, 814 S.W.2d at 729. The supreme court took this action to oblige the trial court to determine whether the due process violation was harmless; the supreme court itself ruled that the denial of a transfer hearing *was* a violation of due process principles. *Id.* Unlike in the present case, however, Sawyers was totally denied the statutory right not to be transferred for trial as an adult without a hearing. Because no transfer hearing was afforded Sawyers, the supreme court lacked any basis for concluding that one was unnecessary. In the present case, not only did the hearing occur, but the defendant's interests were advocated by counsel. Thus, the criminal court was positioned to evaluate whether notions of fundamental fairness were offended in that hearing. This determination, we note, is not one of harmlessness of a constitutional error; rather, it adjudicates whether a constitutional violation occurred in the first instance.

## II. Perjury in the Transfer Hearing

The defendant unsuccessfully moved the trial court to remand his case to juvenile court for a new transfer hearing because, he asserted, Michael Sellers gave perjured testimony in the transfer hearing. Essentially, the defendant claims that, in the transfer hearing, Sellers did not fully admit his involvement in the planning and execution of the victim's murder. He claims that although Sellers testified truthfully at the hearing that he entered the victim's residence shortly after she was murdered, he failed to mention his prior involvement in the planning of the crime, including his motivation by lucre. Although Sellers testified in the transfer hearing that he panicked after seeing the victim's body, he failed to disclose that he panicked only after he failed to find money or drugs in the basement. The defendant also claims that Sellers failed to disclose in the transfer hearing that he had left the juveniles to take the blame for the homicide and had called the police to divert attention from himself.

---

[2]*In re Gault*, 387 U.S. 1, 87 S. Ct. 1428 (1967), established that children, as well as adults, enjoy constitutional protections, especially when their interest in physical freedom is threatened by the state. *See also Schall v. Martin*, 467 U.S. 253, 104 S. Ct. 2403 (1984); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970). The child's interest in liberty, however, is limited because "juveniles, unlike adults, are always in some form of custody." *Doe v. Norris*, 751 S.W.2d 834, 839 (Tenn. 1988).

We need only address two aspects of the issue. First, we are unconvinced that Sellers presented false sworn testimony in the transfer hearing. This conclusion has two components. The first component is that the defendant essentially complains that Sellers was less than forthcoming in the transfer hearing, not that he made false statements. *See* Tenn. Code Ann. § 39-16-702(a) (2003) (setting forth alternative modes of committing perjury, all of which require *making* a statement). The second component is that the record fails to establish that Sellers testified falsely, even if one infers that Sellers testified at variance with other statements attributed to him. In that vein, the claim of perjury is often made out by the mere juxtaposition of two sworn, but contradicting testimonies of the same witness. In the present case, the record contains no sworn testimony of Sellers to compare with his transfer hearing testimony. In his brief, the defendant cites merely to the statements of counsel, made during pretrial arguments, to illustrate that Sellers' hearing testimony was not forthcoming. "[S]tatements of counsel are not evidence." *State v. Electroplating, Inc.,* 990 S.W.2d 211, 224 (Tenn. Crim. App. 1998). We are aware that Sellers' pretrial statement was presented as an exhibit to the pretrial hearing, but we notice that the pretrial statement was undated and unsworn. In the absence of contradictory sworn testimonies, one may question whether the defendant otherwise established any sworn falsity on Sellers' part in the transfer hearing, despite that, at trial, Hugh Williams testified to Sellers' deeper involvement in the crime.

Second, we perceive no legal consequence, even if Sellers is deemed to have testified falsely in the transfer hearing. In his brief, the defendant complains that Sellers' flawed testimony impugns the "reasonable cause" portion of the juvenile court's regimen of findings. However, on the issue of reasonable cause, the juvenile court transfer hearing "is the exact counterpart of the General Sessions preliminary hearing to the extent of the issue of probable cause." *State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Ct. App. 1979). We know that, generally, a defect in probable cause proceedings such as the procurement of an arrest warrant has "no consequence in the law unless the defendant is prejudiced by it." *State v. Campbell*, 641 S.W.2d 890, 893 (Tenn. 1982). There is no prejudice when the state "secures an indictment or presentment, [with the result that] any defects emanating from the original arrest warrant are cured." *Danny Ray Meeks v. State*, No. 01C01-9709-CC-00387, slip op. at 3-4 (Tenn. Crim. App., Nashville, Oct. 23, 1998). Similarly, a claimed defect of conflict of interests in the testimony in a preliminary hearing is cured by the grand jury's determination of probable cause and rendering of an indictment. *State v. Prince Jameel R. Tariq*, No. 03C01-9602-CR-00086, slip op. at 7 (Tenn. Crim. App., Knoxville, Feb. 18, 1997). In the present case, the juvenile court's transfer order was followed by the grand jury's determination of probable cause and return of an indictment for first degree murder. Any testimonial or reasonable-cause defect in the transfer hearing was cured.

### III.  Denial of Extension of Plea Cut-off Date

The defendant is aggrieved that the trial court denied his request to extend the period for plea-bargaining past his 18th birthday. The trial court's plea cut-off date was April 11, 2005. The defendant attained his 18th birthday on May 10, 2005, the day his jury trial began. He claims that because his trial counsel was professionally bound to respect his wishes as to a plea or a waiver of jury trial, he should have been availed the opportunity to attain adulthood before forfeiting the

opportunity to exploit a plea opportunity, especially in light of his mother's relationship to the victim, her daughter.

The defendant did not, however, cite any authority for this claim. This may be because the paucity of law that exists on the point indicates that, pursuant to his juvenile court transfer adjudication, he was to "be dealt with as an adult as to all pending and subsequent criminal charges." Tenn. Code Ann. § 37-1-134(c) (2005). Given that his rite of passage was marked by the transfer order, we cannot see, nor does the defendant articulate, how his ability to appreciate, or opportunity to gain, a favorable plea bargain would have been enhanced with an additional 30 days. At any rate, the failure to cite to apt authority is a waiver of the claim on appeal. R. Tenn. Ct. Crim. App. 10(b).

## IV. Sufficiency of the Evidence

In his challenge to the sufficiency of the convicting evidence, the defendant advances his inferences from the evidence that he was essentially the pawn of Sellers and Crockett and that the inculpating evidence supplied by Williams was tainted by his own self-interests in securing a favorable guilty plea in exchange for testifying against the defendant.

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003), *perm. app. denied* (Tenn. 2004). Especially inimical to the defendant's claim is the well-rooted axiom that the appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *Id.* at 655. Also, the credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

The defendant was charged with and convicted of first degree murder, specifically the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (2003) (proscribing premeditated first degree murder). Premeditation "is an act done after the exercise of reflection and judgment" and "means that the intent to kill must have been formed prior to the act itself." *Id.* § 39-13-202(d). Although "[i]t is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time," premeditation occurs only when the "accused was sufficiently free from excitement and passion." *Id.*

The evidence in the light most favorable to the state established that prior to May 2, 2004, the defendant contemplated the murder of not only his sister, but also his mother and her male

companion.  Although the other conspirators contributed ideas and narcotics to the enterprise, the defendant chose the day for killing his sister and prompted the other conspirators into action.  He devised the method of killing the victim and orchestrated Hugh Williams' movements during the attack.  Mr. Williams' testimony, as an accomplice, was corroborated by physical evidence, an independent witness, and the defendant's pretrial statement.  We have no pause in pronouncing the evidence sufficient to support the conviction of premeditated first degree murder.

*V. Conclusion*

None of the defendant's appellate claims merits relief, and the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE